UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| United States of America, | Case No.: 18-CR-3237-GPC-1 |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION TO DISMISS INFORMATION** |
| v. | |
| IGNACIO MENDEZ-VARGAS, | **[ECF No. 23.]** |
| Defendant. | |

In the wake of the Supreme Court's decision in *United States v. Pereira*, --- U.S. ----, 138 S. Ct. 2015 (2018), courts throughout the country have diverged as to whether a Notice to Appear which does not provide written notice of the time and place of removal hearings renders a prior removal order susceptible to collateral attack under 8 U.S.C. § 1326(d).

The Defendant, Mr. Mendez-Vargas, has moved to dismiss the government's information charging him with illegal reentry under 8 U.S.C. § 1326(a) and (b) pursuant to § 1326(d) and *Pereira*. (ECF No. 23.) Defendant seeks to dismiss the information on the ground that the prior removal order against him was invalid and void because the immigration judge that issued the order lacked "jurisdiction" to commence removal proceedings. Leaning on *Pereira*, Defendant argues that the charging document in his removal proceeding was deficient as it omitted the date and time of the removal hearing.

The government has opposed the motion. (ECF No. 24.) For the reasons that follow, the Court **denies** the motion.

I. **Background**

Defendant is a national of Mexico without authorization to enter or remain in the United States. He has been ordered removed from the United States on several occasions.

In 1993, Defendant was apprehended by Border Patrol agents near the Otay Mesa Port of Entry after having illegally entered the United States. (ECF No. 24-1.) As a result of this encounter, an Immigration Judge ordered Defendant be deported, and he was physically removed from the United States on January 28, 1993. (ECF No. 24-2.)

Thereafter, in July of 2005, Defendant was arrested within the United States for driving with a suspended license. This arrest triggered the scrutiny of immigration officials, who caused a Notice to Appear ("NTA") to be issued and personally served upon Defendant, who was detained at the Mira Loma Detention Center, on July 15, 2005. (ECF No. 23-2, at 2.)

That NTA did not specify the time and place of his removal proceedings. Instead, the NTA specified only that Defendant was to appear before an immigration judge at "a date to be set" and "at a time to be set." (*Id.*) Defendant signed the part of the NTA which waived his right to a 10-day period prior to his removal proceedings, and requested an immediate hearing. (*Id.* at 3.) On August 4, 2005, Defendant was brought before an Immigration Judge for a group removal proceeding. (ECF No. 23-1, at 2.) The Immigration Judge ordered Defendant be removed from the United States. (*Id.*) It is not clear when Defendant learned of the date and time of the removal hearing; the record does not indicate that he ever received written notice of the date and time. But because Defendant did attend the hearing while in custody, immigration officials presumably transported him from the detention facility to the immigration court.

The 2005 removal order was reinstated twice—once in 2008, after Defendant's state-law conviction for infliction of corporal injury on a spouse, Cal. Penal Code §

273.5(a) and assault with a deadly weapon, Cal. Penal Code § 245(a)(1), and again in 2012 after he was charged with illegal reentry, 18 U.S.C. § 1326. Defendant was physically removed from the United States following each of these convictions. (ECF Nos. 24-3, 24-6.)

More recently, on July 24, 2018, the government charged Defendant with an Information alleging another violation of 18 U.S.C. § 1326. (ECF No. 11.) In that Information, the government alleges that Defendant was found in this country without permission, on or about June 20, 2018, and that he had been previously removed from the Unite States subsequent to December 7, 2012. Because the 2012 removal referenced in the Information was based on a reinstatement of the 2005 removal order, the parties have focused their arguments on the legality *vel non* of the 2005 removal order.

## II. DISCUSSION

"A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has the right to bring a collateral attack challenging the validity of his underlying removal order, because that order serves as a predicate element of his conviction." *United States v. Ochoa*, 861 F.3d 1010, 1014 (9th Cir. 2017).

In order to sustain a collateral challenge under Section 1326(d), the defendant must demonstrate that he or she (1) has exhausted all administrative remedies available to appeal the deportation order; (2) the underlying deportation proceedings at which the order was issued improperly deprived him of judicial review; and (3) the deportation order was fundamentally unfair. 8 U.S.C. § 1326(d); *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1048 (9th Cir. 2004). With respect to the third prong, "[a]n underlying removal order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying [removal] proceeding, and (2) he suffered prejudice as a result of the defects." *Ubaldo-Figueroa*, 364 F.3d at 1048 (internal quotation marks and alterations omitted).

The defendant bears the burden of proving all the Section 1326(d) elements. *Ochoa*, 861 F.3d at 1019.

## A. Defendant's Arguments

Defendant stakes the success of his motion to dismiss on the fundamental unfairness prong of § 1326(d). He argues that his 2012 reinstatement of removal was contrary to due process because the Immigration Judge which issued the original removal order in 2005 lacked jurisdiction over the proceedings in light of *Pereira*.[1] His contention is that because *Pereira* held that a putative notice to appear under 8 U.S.C. § 1229(a) of the Immigration and Nationality Act ("INA") which omits the time and date of removal proceedings is not a notice to appear, *see Pereira*, 138 S.Ct. at 2113–14, and because his 2005 NTA did not list the time and place of his removal hearings, the immigration judge never had jurisdiction over him in August 2005, and thus his 2005 removal order is invalid. Because there was no valid removal order, there was no valid deportation, and the current Information for unlawful reentry must be dismissed.

Defendant further posits that because he "was removed when he should not have been,"—i.e., when there was no jurisdiction by the immigration judge—he "clearly suffered prejudice." (ECF No. 23-1, at 6 (quoting *United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006)). He further contends that he is not required to exhaust administrative remedies or seek judicial review because, prior to *Pereira*, his jurisdictional arguments would have been futile. (*Id.* at 7–9.)

For support, Defendant leans on 8 C.F.R. § 1003.14 ("Regulation 1003.14"), 8 U.S.C. § 1229(a)(1), and *Pereira*. Regulation 1003.14(a) provides in relevant part: "Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service." 8 C.F.R. § 1003.14(a). "Charging document" means "the written instrument which initiates a

---

[1] Defendant briefly referenced, in his recitation of the facts, the failure of the immigration judge to "adequately explain voluntary departure" and to "advise Mr. Mendez that he was eligible for that form of relief." (ECF No. 23-1, at 2.) However, besides that initial mention, Defendant did not further develop this argument with respect to any due process violation. This argument has been waived for failure to brief.

proceeding before an Immigration Judge," including an "Order to Show Cause" and a notice to appear, respectively for proceedings initiated prior to April 1, 1997 and for those initiated thereafter. 8 C.F.R. 1003.13. The regulation at 8 C.F.R. § 1003.15, in turn, enumerates the mandatory contents of any Notice to Appear. Notably, Regulation 1003.15 does not require that the date, time, and place of any removal proceedings be provided.

In *Pereira*, the Supreme Court held that "[a] notice that does not inform a noncitizen when and where to appear for removal proceedings is not a 'notice to appear under section 1229(a)' and therefore does not trigger the stop-time rule" set forth in § 1229b(d)(1)(A). *Pereira*, 138 S. Ct. at 2110–11. Section 1229(a)(1) provides, in pertinent part, "[i]n removal proceedings under section 1229a of this title, written notice (in this section referred to as a 'notice to appear') shall be given" to the alien specifying 10 listed categories of information, including "[t]he time and place at which the proceedings will be held." 8 U.S.C. § 1229(a)(1).

Defendant insists that the statutory definition of the NTA, as discussed in *Pereira*, and not the regulatory definition at Regulation 1003.15, applies to the "charging document" described in Regulation 1003.14(a).

### B. Reception of Defendants' *Pereira*-based Arguments in Other Courts

There is some caselaw in Defendant's favor holding that an NTA which does not provide the date, time, and place does not serve as a valid charging document vesting the immigration judge with jurisdiction to commence removal proceedings. *See e.g.*, *United States v. Virgen-Ponce*, 320 F. Supp. 3d 1164 (E.D. Wash. 2018); *United States v. Pedroza-Rocha*, EP-18-CR-1286 DB (W.D. Tex. Sept. 21, 2018); *United States v. Cruz-Jiminez*, No. A-17-CR-630SS, 2018 WL 5779491 (W.D. Tex. Nov. 2, 2018).

This argument, however, has lost some of its luster since its inception. (*See* ECF No. 24, at 6–9 (citing a large number of decisions denying collateral attacks on *Pereira* grounds).) Notably, the district court in *United States v. Zapata-Cortinez*, No. SA-18-CR-343-OLG, 2018 WL 4770868 (W.D. Tex. Oct. 2, 2018), which originally found in

favor of the defendant, recently changed course. *See Zapata-Cortinez*, No. SA-18-CR-343-OLG, 2018 WL 6061076 (W.D. Tex. Nov. 20, 2018) (denying the motion to dismiss pursuant to § 1326(d) upon reconsideration).

The Board of Immigration Appeals also entertained the *Pereira* issue and found that an NTA which fails to specify the time and place of removal proceedings does not divest the immigration judge of jurisdiction, so long as notice of hearing specifying the information is later sent to the noncitizen. *Matter of German Bermudez-Cota*, 27 I. & N. Dec. 441, 441 (BIA 2018). The so-called "two-step" approach articulated in *Bermudez-Cota* was recently granted *Auer* deference by the Sixth Circuit, which held that a technically-incomplete NTA may be cured, and jurisdiction may lie with the immigration judge, if the mandatory information about the time of hearing is provided separately from the notice. *Hernandez-Perez v. Whitaker*, --- F.3d ---, 2018 WL 6580478, *4, *6 (6th Cir. 2018) (citing *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).

The Sixth Circuit is not alone in declining an expansive reading of *Pereira*. The Fourth Circuit, in an unpublished decision rendered on plain error review, also rejected the extension of *Pereira* to the 1326(d) context. "*Pereira* did not address the question of an immigration judge's jurisdiction to rule on an alien's removability, and it certainly does not plainly undermine the jurisdiction of the [challenged] removal proceeding." *United States v. Perez-Arellano*, --- F. App'x ----, 2018 WL 6617703, at *3 (Dec. 17, 2018) (unpublished).

**C. Discussion**

While this case was pending, the Ninth Circuit issued a decision in *Karingithi v. Whitaker*, 913 F.3d 1158 (9th Cir. 2019). There, the Court held that an immigration judge had jurisdiction over removal proceedings even though the NTA lacked a date and time for the removal proceedings. The *Karingithi* opinion proceeds in two parts, both of which are dispositive of Defendant's claims for relief in this case.

First, the Ninth Circuit unambiguously held that it is the INA's *regulations*, and not the INA statute *itself* that governed the requirements for a Notice to Appear, in so far

as jurisdiction is concerned. The opinion points out that the INA statute, which requires the "time and place at which the proceedings will be held," § 1229(a)(1)(G)(i), is markedly "silent as to the jurisdiction of the Immigration Court." *Karingithi*, 913 F.3d at 1160. Plainly put, "Section 1229 says nothing about the Immigration Court's jurisdiction." *Id.*

Instead, it is the regulatory text at Regulation 1003.14(a) which specifies the conditions under which jurisdiction vests with the Immigration Court. 8 C.F.R. § 1003.14(a) ("Jurisdiction vests, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court.") Because only the regulations define when jurisdiction vests, the regulatory definition "also necessarily governs when a Notice to Appear is sufficient for jurisdictional purposes." *United States v. Rosas-Ramirez*, Case No. 18-CR-00053-LHK, 2019 WL 428783 (N.D. Cal. Feb. 4, 2019) (discussing *Karingithi*).

Under the INA's regulations, jurisdiction vests upon the filing of a charging document, which includes a notice to appear. 8 C.F.R. § 1003.13. An NTA, as defined by the regulations, "does not require that the time and date of proceedings appear in the initial notice." *Karingithi*, 913 F.3d at 1160. Rather, the regulation compels inclusion of such information only "*where practicable*." *Id.* (citing 8 C.F.R. § 1003.18(b) (emphasis in original)). To read the statutory requirement of date and time into the regulatory requirements would do violence to the regulatory scheme. *See id.* ("[R]eading such a requirement into the regulations would render meaningless [the regulations'] command that such information need only be included 'where practicable.' (citing 8 C.F.R. 1003.18(b)). Therefore, the Ninth Circuit concluded that, pursuant to the regulations, an NTA need not include time and date information to vest jurisdiction with the immigration judge.

Second, the Ninth Circuit found that the advent of *Pereira* did little to change the statutory and regulatory interplay described above. The Ninth Circuit highlighted the fact that the Supreme Court itself limited its holding to the "narrow" context of the stop-

7

18-CR-3237-GPC-1

time rule. *Karingithi*, 913 F.3d at 1161 (citing *Pereira*, 138 S. Ct. at 2110). And, it found significant that the stop-time statute at issue in *Pereira*, 8 U.S.C. § 1229b(d)(1) specifically cross-referenced 8 U.S.C. § 1229(a), the statute defining a "Notice to Appear." *Id.* ("*Pereira* treats this statutory cross-reference as crucial: 'the word "under" provides the glue that bonds the stop-time rule to the substantive time-and-place requirements mandated by § 1229(a)'." (quoting *Pereira*, 138 S. Ct. at 2117)). By contrast, because the regulations regarding an immigration judge's jurisdiction in removal proceedings do not similarly cross-reference 8 U.S.C § 1229b(d)(1), any attempt to extend the non-jurisdictional ruling in *Pereira* to the jurisdictional issue at hand, fails. In the Ninth Circuit's words: "[t]here is no 'glue' to bind § 1229(a) and the jurisdictional regulations [at issue here]: the regulations do not reference § 1229(a), which itself makes no mention of the IJ's jurisdiction." *Id.* at 1161.

Moreover, as the Sixth Circuit remarked in *Hernandez-Perez*, 911 F.3d 305, there are additional reasons to believe that *Pereira* has no relevance to jurisdiction. Among other things, the Sixth Circuit noted that notwithstanding the defective NTA, the *Pereira* Court did not invalidate the petitioner's underlying removal proceedings. Based upon that observation, the Sixth Circuit concluded that "[i]f *Pereira*'s holding applied to jurisdiction, there also would not have been jurisdiction in *Pereira* itself. But the Court took up, decided, and remanded *Pereira* without even hinting at the possibility of a jurisdictional flaw." *Id.* at 313.

In view of the Ninth Circuit's opinion in *Karingithi* and the Sixth Circuit's reasoning in *Hernandez-Perez*, the Court finds *Pereira* inapplicable to this case. Because Defendant's lack-of-jurisdiction argument is predicated on the relevance of *Pereira*, that argument must be rejected. This finding not only vitiates Defendant's attempt to prove that his 2005 removal order was issued in violation of due process, but also his claim that he suffered prejudice. Furthermore, because Defendant's collateral attack was premised on his assertion that *Pereira* excused him from showing exhaustion of administrative remedies or attempting to secure judicial review, the inapplicability of *Pereira* to his

2005 removal order dooms those aspects of his contentions as well.  The motion to dismiss is hereby **DENIED**.

**IT IS SO ORDERED.**

Dated:  March 19, 2019

Hon. Gonzalo P. Curiel
United States District Judge